UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ADAM ANDREW PHILLIPS,

                  Petitioner,

v.

PAT WARREN,

                  Respondent.

_____/

Case No. 1:18-cv-957

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Adam Andrew Phillips is incarcerated with the Michigan Department of Corrections at the Macomb Correctional Facility (MRF) in Macomb County, Michigan.  Following a two-day bench trial in the Kent County Circuit Court, Petitioner was convicted of assault with intent to commit murder (AWIM), in violation of Mich. Comp. Laws § 750.83.  On July 15, 2014, the court sentenced Petitioner to a prison term of 17 year, 6 months to 70 years.

        On August 22, 2018, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

    I.      The court of appeals erred in concluding the trial court had not erred in finding that sufficient evidence of the specific intent to kill had been presented, contrary to Michigan legal authority and Defendant/Appellant's federal constitutional rights.

    II.     Mr. Phillips was deprived of his Fifth and Fourteenth Amendment constitutional rights of due process and his Sixth Amendment constitutional right to effective assistance of trial and appellate counsel.

    III.    The trial court erred in allowing prior incidents of domestic violence under MCL 768.27b, or alternatively the trial court abused it[']s discretion to

allow MRE 404(b) evidence when the prior acts were not substantially similar.

IV.    *People v. Ackley* clarified the obligations of trial counsel to secure appropriate experts in cases where expert testimony is needed. *Ackley* was decided after Mr. Phillips trial concluded and his direct appeal had been filed; therefore, he is entitled to now raise the legal principles of *Ackley*.

(Pet., ECF No. 1, PageID.2-3.)  Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they are noncognizable, procedurally defaulted, or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are noncognizable and/or meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations[1]

On November 5, 2013, Petitioner's girlfriend and their two-year-old child visited Petitioner at his home in Grand Rapids, Michigan.  Petitioner found nude pictures of his girlfriend on her cellphone, pictures that he understood she had sent to other men.  According to Petitioner, he broke up with the girlfriend.  She responded with a sexual advance—a hickey, that turned into a bite.  He responded by swinging her by the hair, so that her head hit the wall a couple of times, and punching her.  Then, according to Petitioner, he prepared to leave the home.  She came after him screaming.  He punched her multiple times.  She dropped to the floor.  He kicked her in the head until she was unconscious.

---

[1] The factual allegations set forth herein are derived from the testimony of Detective Valerie Carrasco and Clifford Mead, the family friend who owned the home where Petitioner lived and where the crime occurred.  Detective Carrasco recounted Petitioner's statements regarding the assault given during a post-arrest interview.  (Trial Tr. I, ECF No. 11-3, PageID.170-174; Trial Tr. II, ECF No. 11-4, PageID.183-187.)  Mr. Mead testified regarding the events leading up to the assault and immediately after.  (Trial Tr. I, ECF No. 11-3, PageID.144-154.)  He was not in the house during the assault.  (*Id*., PageID.147-148.)

The injuries Petitioner inflicted upon his girlfriend were so severe she could not remember that day.  She was transported by ambulance to the hospital.  She suffered severe brain trauma.  She was hospitalized for 45 days.

The prosecutor charged Petitioner with assault with intent to murder.  Petitioner waived his right to a jury trial.  The trial judge heard about three and one-half hours of testimony. The court heard closing arguments and immediately reviewed the testimony of each witness, considered the evidence in light of the elements of the charged offense, and found Petitioner guilty beyond a reasonable doubt.  (Trial Tr. II, ECF No. 11-4, PageID.190-193.)

The trial court appointed appellate counsel for Petitioner at his request.  Appointed appellate counsel pursued a motion for resentencing in the trial court, unsuccessfully.  (Hr'g Tr., ECF No. 11-6; Mot. and Br., ECF No. 11-7, PageID236-250; Kent Cty. Cir. Ct. Order, ECF No. 11-7, PageID.253.)  Before the appeal brief was due, however, Petitioner retained counsel to replace appointed counsel.  (Substitution of Attorney, ECF No. 11-7, PageID.254.)  The appeal brief Petitioner filed with the assistance of retained counsel raised two issues: the same issues he raises as issues I and III in his habeas petition.  (Pet'r's Appeal Br., ECF No. 11-7, PageID.260.) By unpublished opinion issued January 19, 2016, the court of appeals rejected Petitioner's challenges and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 11-7, PageID.220-222.)

Petitioner, again with the assistance of his retained counsel, filed an application for leave to appeal in the Michigan Supreme Court.  Petitioner's application raised only one of the two issues he raised in the court of appeals: the issue he raises as issue I in his habeas petition. (Appl. for Leave to Appeal, ECF No. 11-8, PageID.308.)  By order entered September 27, 2016, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 11-8, PageID.304.)

3

Petitioner then returned to the trial court.  He filed a motion for relief from judgment raising three issues: the same issues he raises as issues II, III, and IV in his habeas petition.  By order entered May 30, 2017, the trial court denied the motion.  (Kent Cty. Cir. Ct. Order, ECF No. 11-11; ECF No. 1-1, PageID.34-37.)  The trial court rejected Petitioner's claims because he did not show cause for failing to raise them on his initial appeal or any resulting prejudice.  Petitioner filed *pro per* applications for leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered October 27, 2017, and July 3, 2018, respectively.  (Mich. Ct. App. Order, ECF No. 11-12, PageID.422; Mich. Order, ECF No. 11-13, PageID.500.)  This petition followed.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Sufficiency of the evidence (habeas issue I)

Petitioner claims that there was insufficient evidence of his intent to kill his girlfriend.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.* Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).  The *Jackson* standard applies to bench trials the same way it applies to jury trials.  *See, e.g., United States v. Bronzino*, 598 F.3d 276, 278 (6th Cir. 2010).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier-of-fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals'

consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Where the trier-of-fact is a jury, the habeas court can only guess at the inferences the jurors drew or the testimony they found credible or rejected as incredible. In Petitioner's case, the trial judge provided a detailed analysis of the evidence, and the inferences he drew from that evidence, as the foundation of his determination that Petitioner was guilty of AWIM. The court of appeals then independently evaluated the evidence presented:

> To convict defendant of assault with intent to commit murder, the prosecution was required to prove that defendant committed (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Defendant argues that he did not have the requisite intent to kill. The intent required to convict defendant of assault with intent to kill must be an actual intent to kill and "may not be proven by an intent to inflict great bodily harm or a wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm." *People v Brown*, 267 Mich App 141, 150; 703 NW2d 230 (2005). Intent may be proven by inference from any facts in evidence, *People v Lawton*, 196 Mich App 341, 350; 492 NW2d 810 (1992), and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to prove intent, *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998).

> The testimony in this case could cause a reasonable jury to infer that defendant intended to commit murder. The prosecution presented evidence that defendant previously assaulted the victim when he believed she had cheated on him and made various threats to kill the victim. The assault at issue here occurred when defendant found naked photographs on the victim's cellular telephone. He responded by slamming her into the wall multiple times and repeatedly kicking and punching her in the head, even after she became unconscious. When she arrived at the hospital, the victim was comatose and in the process of dying. Without medical intervention, the victim would have died. A trier of fact could reasonably infer from this evidence that defendant had the requisite intent to kill when he assaulted the victim. Therefore, the prosecution presented sufficient evidence to convict defendant of assault with intent to commit murder.

(Mich. Ct. App. Op., ECF No. 11-7, PageID.221-222.)  Thus, the court of appeals reviewed the evidence in a light that favored the prosecution against the state law elements of the offense, exactly as *Jackson* directs.

Petitioner attacks the court of appeals' reasoning by isolating each specific fact and: (1) explaining why that fact is insufficient to support the inference; or (2) why that evidence should not be credited.  For example, Petitioner claims his prior jealous assault is not sufficient because it was much less savage and did not demonstrate any intent to kill.  Petitioner claims further that, if one views the evidence regarding the threats in a way that favors him, they are simply not credible: the written threat might not have been written by him, the voice mail threat may not have been about the victim, and the condition upon which the third threat depended never occurred.

Petitioner's approach turns the *Jackson* standard on its head on two levels.  First, Petitioner invites the Court to view the evidence in a light that favors him when *Jackson* requires viewing the evidence in a light that favors the prosecution.  Second, Petitioner asks the Court to invade the province of the finder-of-fact by drawing inferences in Petitioner's favor—i.e., drawing an inference that Petitioner intended to cause great bodily harm, not murder—even though the inference that Petitioner intended to murder the victim is reasonable.  Moreover, Petitioner suggests that each bit of evidence must support the inference of Petitioner's intent rather than the evidence considered as a whole.

*Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts.  443 U.S. at 319.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'"  *Id*. at 655.  The Court described a reasonable inference as an inference that a rational jury could make from the facts.  Certainly, the inference identified by the court of appeals—that

Petitioner intended to kill the victim based on his prior assault of the victim in response to infidelity, threats to kill her if infidelity occurred again, discovery of nude photos suggesting infidelity, and savage beating of the victim—rationally flows from the underlying facts. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id.* at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. He has not.

Petitioner claims his less-savage earlier beating of the victim in response to infidelity, standing alone, does not support an inference of an intent to kill; but, when considered along with threats to kill if there were additional infidelity, the inference is patently reasonable. Similarly, Petitioner claims that the severity of the injuries, standing alone, might not suffice to establish an intent to kill. Yet, considered with the other evidence identified by the court of appeals, an inference of such an intent is rational. Nothing more is required.

Petitioner has failed to show that the court of appeals determination that the evidence sufficed to support the AWIM verdict is contrary to, or an unreasonable application of, *Jackson.* Accordingly, he is not entitled to habeas relief on his sufficiency claim.

## IV.    Admission of prior bad acts evidence (habeas issue III)

Petitioner contends the trial court should not have allowed evidence of his prior beating of the victim or his prior threats of violence against her.[2] Petitioner's trial counsel objected

---

[2] Respondent argues that Petitioner procedurally defaulted this issue. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). Respondent argues that Petitioner procedurally defaulted this issue. Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may

to admission of the evidence.  The trial court admitted it under Mich. Comp. Laws § 768.27b.  That statute provides: "in a criminal action in which the defendant is accused of an offense involving domestic violence  . . ., evidence of the defendant's commission of other acts of domestic violence . . . is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403."  Mich. Comp. Laws § 768.27b.  Domestic violence includes "causing . . . physical . . . harm to a family or household member" and "placing a family or household member in fear of physical  . . . harm.  *Id.*  "An individual with whom the person has . . . a child in common" and "[a]n individual with whom the person has  . . . a dating relationship" are included in the definition of family or household member.

It is undisputed that Petitioner and his victim were dating and that they had a child in common.  Moreover, the evidence Petitioner contends should not have been admitted is evidence that, before November 5, 2013, he had beaten the victim and threatened to kill her.  The court of appeals concluded that the challenged evidence was admissible under the statute and under Michigan Rule of Evidence 403 and that Michigan Rule of Evidence 404(b) did not apply.  (Mich. Court App. Op., ECF No. 11-7, PageID.220-221.)

To the extent Petitioner contends that the state courts did not follow Mich. Comp. Laws § 768.27b or properly apply the Michigan Rules of Evidence, he does not state a cognizable habeas claim.  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or

---

assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).  The Court will proceed as if there is no procedural default.

10

improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle,* 502 U.S.. at 67-68.

The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Thus, this Court is bound by the state appellate court's determinations that the evidence was admissible under the state statutes and rules. The state court's determination, however, is not immune from federal constitutional scrutiny. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the Court may not grant relief if it would have decided the evidentiary question differently. The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Applying that standard, Petitioner cannot prevail. There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. 502 U.S. at

11

75.  The court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997)—a case upon which Petitioner relies—and *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at, 512.  Accordingly, Petitioner is not entitled to habeas relief on his claim with regard to the admission of evidence relating to the prior beating of his victim or his prior threats to kill her.

## V.     Ineffective assistance of trial and appellate counsel (habeas issues II and IV)

### A.     Trial counsel

Petitioner argues that his trial counsel rendered constitutionally ineffective assistance because counsel failed to engage an expert to counter the testimony offered by the victim's treating doctor or  a handwriting expert to opine that a handwritten threat to kill the victim was not written by Petitioner.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the

challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The trial court considered Petitioner's ineffective assistance claim when the court resolved Plaintiff's motion for relief from judgment:

> "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense."  *People v. Russell*, 297 Mich. App. 707, 716, 825 N.W.2d 623, 629 (2012).  Defendant likens his own case to that of *People v. Ackley*, 497 Mich. 381, 870 N.W.2d 858 (2015), where defendant's trial counsel failed to investigate or introduce an expert witness[] when the prosecution's case rested largely on expert testimony.  However, the structure of the instant case is not at all similar.  The Defendant was convicted of assaulting an individual with an intent to commit murder, and the only expert witness offered by

13

the prosecution was the victim's treating physician.  The expert testimony offered by the prosecution was merely supporting evidence for the testimony of the victim, the victim's mother, and a detective.

The Defendant further argues that his trial counsel should have procured a handwriting expert in order to dispute the evidence of a threatening note written by the defendant to the victim.  However, Detective Carrasco testified that Defendant had informed [her] that the note was in Defendant's handwriting.  Further, the Defendant cannot show that the failure to call any experts caused the Defendant prejudice.  Neither piece of evidence that Defendant argues should have been refuted by expert testimony was instrumental in the prosecution's case against the Defendant.  Defendant is unable to prove that but for counsel's decision not to employ experts, the outcome of the trial would have been different, and thus cannot prove prejudice.

(Kent Cty. Cir. Ct. Order, ECF No. 1-1, PageID.36-37.)  Both the court of appeals and the supreme court refused to consider Petitioner's applications to appeal that decision because defendant had failed to show he was entitled to relief.  (Mich. Ct. App. Order, ECF No. 1-12, PageID.422; Mich. Order, ECF No. 11-13, PageID.500.)

Petitioner's argument regarding expert testimony relies entirely on *People v. Ackley*.  The trial court's determination that Ackley's situation and Petitioner's situation are dissimilar is well-founded.  Ackley was accused of first-degree child abuse and felony murder when his girlfriend's three-year-old daughter died while in his care.  *Ackley*, 870 N.W.2d at 860.  Ackley claimed the child died as the result of an accidental fall while he was absent.  The prosecution theorized that only blunt force trauma or shaking could have caused the victim's injuries.  The prosecutor presented multiple medical experts to support his theory.  Ackley's trial counsel contacted only one expert as he prepared Ackley's defense.  That expert told counsel that there was an almost religious divide among medical experts regarding whether short falls might cause the type of injuries the victim suffered.  The expert was on the prosecutor's side of that divide.  He referred counsel to an expert on the other side.  Counsel never contacted that expert or any other expert, nor did counsel research his client's side of the "short fall" issue.  Counsel

continued to rely on the expert he consulted initially as he prepared Ackley's defense.  Ackley offered no supporting expert testimony at trial.

The Michigan Supreme Court applied *Strickland* and concluded that Ackley's counsel's actions were professionally unreasonable.  He should have pursued an expert on the other side of the "short fall" issue and he should have investigated further the possible causes of the victim's injuries.  In failing to do so, he left Ackley with a defense theory devoid of objective, expert testimonial support and counsel was insufficiently equipped to challenge the prosecution's experts.  *Ackley*, 870 N.W.2d at 864.

Petitioner's circumstance was markedly different than Ackley's.  The experts in Ackley's case were providing testimony regarding the potential causes of the victim's injuries.  There was no dispute regarding the cause of the victim's injuries in Petitioner's case—Petitioner, by his own admission to the police, savagely beat her.  The expert testimony in Petitioner's case was focused principally on the treatment she received.  The medical expert provided factual testimony regarding his treatment of the victim and, based on the medical record, and provided factual testimony regarding her condition when she arrived in the emergency department.

The treating physician reported that blood test results showed a "significant accumulation of metabolic acids" indicating "that she was not adequately circulating oxygenated blood for a period of time before she arrived . . . ."  (Trial Tr. II, ECF No. 11-4, PageID.182.)  The doctor described the problem as follows:  "she was not maintaining enough muscle tone to maintain an open airway so that  . . . the air could go in and out from her lungs . . . she was also choking on her secretions and blood . . . ."  (*Id.*)  Even a layman recognized that problem.  Clifford Mead, the owner of the home where the assault occurred, testified that he found the victim unconscious moments after the assault and that the victim was having trouble breathing.  (Trial Tr.

I, ECF No. 11-3, PageID.149, 154.)  Additionally, there is no dispute that the victim was comatose. She was unable to feed herself; she was given nutrition by gastric tube for weeks.  (Trial Tr. II, ECF No. 11-4, PageID.182-183.)

The doctor's testimony included elements that might be described as expert opinion, specifically the doctor's statement that the victim was dying when she arrived at the hospital.  That opinion is the testimony that Petitioner thinks counsel should have countered with opposing expert testimony.  But, Petitioner does not indicate that opposing expert testimony was even available.  This is not like the situation in *Ackley* where a recognized "religious" divide existed among medical experts and an expert on Ackley's side of the issue indicated he would have testified favorably to Ackley's defense.  It seems extremely unlikely that counsel would have found an expert to testify that the victim's injuries were not life-threatening.  Moreover, this is not a situation like *Ackley* where opposing expert testimony, if credited, exonerated the defendant.

It is Petitioner's burden to show that the state court's determination is contrary to, or an unreasonable application of, *Strickland*.  Absent record support for Petitioner's contention that an expert exists who was willing to testify and whose testimony would be favorable to Petitioner, it is impossible for Petitioner to show that his counsel was professionally unreasonable for failing to pursue such expert testimony or that it made any difference in the result.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[4]

---

[4] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the

The same result follows with respect to Petitioner's contention that counsel should have called a handwriting expert to show that the written threat to kill the victim was not written by Petitioner.  Petitioner's burden is more difficult with respect to that proposed expert testimony because the prosecution did not rely on expert testimony to show the written threat was in Petitioner's handwriting—the prosecution relied on Petitioner's own admission of that fact to the investigating detective.  (Trial Tr. II, ECF No. 11-4, PageID.187.)

For the reasons discussed above, the trial court concluded that Petitioner had not shown that trial counsel failed to investigate or failed to act in a professionally reasonable manner in defending Petitioner.  (Kent Cty. Cir. Ct. Op., ECF No. 1-1, PageID.34-37.)  Petitioner has failed to meet his burden to show that the state court's determination is contrary to, or an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief on his claim that trial counsel rendered ineffective assistance by failing to secure expert testimony on Petitioner's behalf.

## B.    Appellate counsel

Petitioner claims that his appellate counsel rendered ineffective assistance in two respects:  first, appellate counsel failed to raise the issue of trial counsel's ineffectiveness as set forth above; and second, appellate counsel raised the challenge to the admissibility of evidence

---

mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

regarding the prior assault and threats in the state court of appeals, but then abandoned that challenge in the state supreme court.  The two-prong analysis of *Strickland* is applicable to Petitioner's claims of ineffective assistance of appellate counsel, but appellate counsel may have even more leeway.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*  Petitioner cannot make that showing.

Petitioner did not have an appeal as of right to the Michigan Supreme Court from the judgment as affirmed by the Michigan Court of Appeals.  Because Petitioner did not have an appeal as of right, he did not have a constitutional right to counsel at the Michigan Supreme Court. *Ross v. Moffitt*, 417 U.S. 600 (1974).  If Petitioner had no right to counsel at that level, he could not be unconstitutionally deprived of the effective assistance of counsel there. *Wainwright v. Torna*, 455 U.S. 586, 587-588 (1982).  Accordingly, Petitioner's ineffective assistance of counsel

claim premised on appellate counsel's failure to raise an issue on discretionary appeal to the state court is groundless.

Even if Petitioner had the right to effective assistance of counsel for counsel's actions at the Michigan Supreme Court, Petitioner would not be entitled to habeas relief. Petitioner cannot show that appellate counsel's failure to continue to press his challenge to the admissibility of evidence regarding the prior assaults and threats was professionally unreasonable. Considering that challenge under state law, the court of appeals determined that the evidence was properly admitted. That determination binds this Court. Because the underlying challenge to admissibility is meritless, an ineffective assistance claim founded on counsel's failure to raise the challenge is also, necessarily, meritless. The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Moreover, considering the claim as a due process challenge, Petitioner has not identified a single case holding that propensity evidence like that admitted in Petitioner's case under Mich. Comp. Laws § 768.27b (or admitted in other cases under Michigan Rule of Evidence 404(b) or similar rules under state or federal law) violates the due process clause.[3]  Thus, Petitioner has failed to show that the admissibility issue was "clearly stronger than" the sufficiency issue

---

[3] The dearth of applicable authority on the issue is not surprising.  The Supreme Court has declined to decide the issue, *see* § IV, above, and the applicable evidentiary rules typically subsume much of the due process consideration of fairness by calling for the exclusion of such, propensity evidence otherwise admissible if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  Mich. R. Evid. 403.

regarding Petitioner's intent.  As a result, Petitioner has failed to show that counsel's abandonment of the issue was professionally unreasonable or that he suffered any prejudice as a result.

Appellate counsel's failure to raise the ineffective assistance of trial counsel occurred first at the Michigan Court of Appeals, where Petitioner had a right to effective assistance. Nonetheless, for the reasons set forth in § V(A), above, Petitioner has also failed to show that the ineffective assistance of trial counsel claims that appellate counsel chose to forego were "clearly stronger than" the sufficiency issue that appellate counsel raised.  The trial court rejected the underlying ineffective assistance of trial counsel claims as meritless and the Michigan appellate courts chose not to disturb that rejection.  This Court has concluded the state courts' determinations regarding trial counsel's assistance were consistent with clearly established federal law.

Because the ineffective assistance of trial counsel claims had no merit, the trial court concluded it was not ineffective assistance for appellate counsel to **not** raise them on appeal. That determination is entirely consistent with clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Recommended Disposition</u>

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: February 11, 2020                          /s/ Ray Kent
                                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).